UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATIONAL COALITION FOR STUDENTS WITH
DISABILITIES EDUCATION AND LEGAL
DEFENSE FUND,

                              Plaintiff,

    v.                                              5:00-CV-1686

THOMAS WILKEY,[1] acting in his official capacity as
Executive Director of the New York State Board of
Elections,

                              Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| KINDLON & SHANKS, P.C.<br>*Attorneys for Plaintiff*<br>100 State Street<br>Albany, New York 12201 | Mirriam Z. Seddiq, Esq. |
| NEW YORK STATE BOARD OF ELECTIONS<br>*Attorney for Defendant*<br>40 Steuben Street<br>Albany, New York 12207-2109 | Todd Valentine, Esq.<br>Special Counsel |
| ANDREW M. CUOMO<br>Attorney General of the State of New York<br>*Attorney for Defendant*<br>The Capitol<br>Albany, New York 12224 | Deborah A. Ferro, Esq.<br>Assistant Attorney General |

NORMAN A. MORDUE, Chief Judge

---

[1] As of the filing date of this motion, defendant Wilkey was no longer New York's Chief Election Official. On January 8, 2003, former Governor George Pataki appointed Peter S. Kosinski to the position of Deputy Executive Director of the New York State Board of Elections to act as Chief Election Officer. The Court notes that the official website of the New York State Board of Elections presently lists Mr. Kosinski and Stanley L. Zalen as "Co-Executive" Directors of the agency. *See* http://www.elections.state.ny.us.

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiff, National Coalition For Students With Disabilities Education and Legal Defense Fund ("NCSD"), alleges that it is a Virginia non-stock corporation, the members of which "consist of students, parents, and others concerned about the educational opportunities and legal rights of students with disabilities[.]"  According to plaintiff, its goal is to "enhance educational opportunities and strengthen the legal rights and remedies of students with disabilities" and to "increase the political power of disabled students[.]"  Plaintiff claims that defendant is in violation of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. 1973gg, *et seq*.  NVRA requires each state to "designate agencies for the registration of voters in elections for Federal office[,]" 42 U.S.C. § 1973gg-5(a)(1), and specifically requires that "all offices in the state that provide State-funded programs primarily engaged in providing services to persons with disabilities" be so designated.  42 U.S.C. § 1973gg-5(a)(2)(B).  An agency so designated must distribute mail voter registration applications, assist applicants in completing voter registration applications, accept completed applications and transmit them to state election officials.  *See* 42 U.S.C. 1973gg-5(a)(4)(A).

Plaintiff alleges that New York's Chief Election Officer has violated NVRA by failing to designate disability services offices ("DSOs") which serve disabled students on the campuses of state-funded colleges and universities as mandatory voter registration offices within the meaning of 42 U.S.C. § 1973gg-5(a)(2)(B).  The complaint seeks declaratory and injunctive relief as well as costs and attorneys fees.

In April 2004, the United States Department of Justice filed a complaint in this

District against New York State for primarily the same relief, with the exception of an award of attorneys fees. *See United States of America v. State of New York*, Civ. Action No. 5:04-CV-00428.  Therein the government asserts, as does plaintiff in the case *sub judice,* that NVRA requires colleges and universities within the State University of New York ("SUNY") and the City University of New York ("CUNY") to designate DSOs as mandatory voter registration agencies.  On or about the date that the government filed the above-referenced complaint, counsel for New York State advised the Court that SUNY and CUNY had filed requests with the Board of Elections voluntarily designate DSOs on the 34 fully state operated SUNY and CUNY campuses which are part of the SUNY system (not including 30 locally sponsored community colleges) as voter registration sites.  The State's counsel, however, emphasized that the voluntary designation of DSOs as voter registration sites did not moot the substantive legal issue to be decided herein, that is, whether NVRA **mandates** that DSOs must be so designated.

Presently there are three motions pending before the Court - motions for summary judgment filed by plaintiff and defendant as well as a motion to withdraw admissions made in the course of discovery by defendant pursuant to Fed. R. Civ. Proc. 36(b).  Specifically, defendant moves for summary judgment on the grounds that: 1) plaintiff failed to comply with the mandatory notice provision of NVRA prior to commencing suit; 2) plaintiff lacks standing to litigate this controversy; and 3) DSOs are not mandatory voter registration offices within the meaning of NVRA.  In support of its motion for summary judgment, plaintiff relies on the holding of the a Fourth Circuit Court of Appeals which it litigated successfully on the issue of whether NVRA mandates designation of DSOs on state college campuses as voter

registration sites. *See Nat'l Coal. For Students with Disabilities Educ. and Legal Def. Fund v. Allen*, 152 F.3d 283 (4th Cir. 1998). Plaintiff also relies on admissions made by defendant during discovery in opposing defendant's arguments concerning failure to comply with NVRA's notice provision prior to commencing suit.[2] Defendant asserts that if he did make

---

[2]

The circumstances under which defendant allegedly made admissions in this case is the subject of intense dispute between the parties. In short, plaintiff served omnibus discovery demands including *inter alia*, a request for admission, upon defendant on or about August 15, 2001, which asked defendant to make the following admissions:

1. New York's collegiate disability services offices are state funded offices primarily geared to providing services to persons with disabilities.
2. New York's Chief Election Officer had a clearly established legal duty to designate the college disability services offices as a voter registration sites.
3. The New York's Chief Election Officer did not designate the college disability services offices as a voter registration site.
4. No one has ever registered to vote through a collegiate disability services office in New York.
5. Prior to the filing of this action against him, defendant Thomas Wilkie was familiar with the court decision issued by the 4th Circuit Court of Appeals in *N.C.S.D. v. Allen,* 152 F.3d 283 (4th Cir. 1998).
6. Prior to filing this action plaintiff, N.C.S.D., gave New York's Chief Election Officer the written notice required under 42 U.S.C. 1973gg-9 (b) that New York was in violation of the National Voter Registration Act.
7. After plaintiff, N.C.S.D. provided New York's Chief Election officer with the notice required under 42 U.S.C. 1973gg-9 (b), the State Board of Elections of New York failed to correct the violation of the National Voter Registration Act outlined in the notice.
8. Defendant Thomas Wilkie serves as New York's "Chief Election Official" as that term is defined by 42 U.S.C. l973gg.
9. Defendant Thomas Wilkie did not designate collegiate disability services offices as voter registration sites due to the voting patterns of the clients served by these offices.
10. Defendant Thomas Wilkie did not designate collegiate disability services offices as voter registration sites due to prejudice against people with disabilities.
11. Todd Valentine filed a false affidavit claiming that N.C.S.D. had not notified the State Board of Elections prior to filing suit.
12. Thomas Wilkie suborned perjury by asking Todd Valentine to file an affidavit that Wilkie knew was false.

any damaging admissions during discovery herein, they were inadvertent and should be withdrawn with permission from the Court.

## II.   DISCUSSION

A.   Motion to Withdraw Admissions

Fed. R. Civ. Proc. 36(a) states that any party may serve upon another a "request for admission" of the truth of any "statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." Such matters are "admitted unless, within 30 days after service of the request," the party to whom it is addressed serves an answer or objection. Fed. R. Civ. Proc. 36(a). "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. Proc. 36(b).[3] It is "well settled that a failure to

---

Based on the thirty (30) day time limit set forth in Rule 36(a), defendant had until mid-September to admit or deny the facts and opinions set forth in plaintiff's request for admissions. Clearly the admissions requested by plaintiff are of facts central to the claims asserted against defendant.

[3] Notwithstanding the automatic effect of the time limitations in Rule 36(a), a court is given some discretion in Rule 36(b) to make exceptions in appropriate circumstances. *See* Fed. R. Civ. P. 36(b) ("[T]he court may permit withdrawal [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.") Notwithstanding this available discretion to create exceptions, the Second Circuit has signaled that a trial court should keep in mind the underlying policy of Rule 36 which is "to narrow issues and speed the resolution of claims." *Donovan v. Carls Drugs Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983). Thus, a court has the power to make exceptions to the rule only when: 1) the presentation of the merits will be aided; and 2) no prejudice to the party obtaining the admission will result. *See id.* at 651. Because the language of the rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule. *Id.* (citing *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966).

respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive." *Moosman*, 358 F.2d at 688.

There is no dispute that the required response to plaintiff's request for admissions was never served. How and why this failure occurred is another matter. It would be far from exaggeration to state that this case has a long and tortured procedural history based in no small part upon the dilatory litigation tactics of plaintiff's former counsel, Michael J. Beattie, who was disqualified from continued representation of plaintiff.[4] On the other hand, the questionable and arguably abusive litigation tactics of Mr. Beattie notwithstanding, defendant's counsel provides little in the way of a reasonable excuse for the utter failure to reply to plaintiff's request for admissions.

Although defense counsel seeks in very tentative terms to suggest that the failure to reply to the Rule 36 request was attributable to a misunderstanding as to whether and when discovery responses were due based on intervening stays of discovery, the fact remains that discovery has long been closed and no response was ever filed. Indeed, it appears that it was not until plaintiff served its response to defendant's summary judgment motion and its own dispositive motion in August 2003, that defense counsel became aware that plaintiff had served a Rule 36 request and was relying on defendant's default admissions. Courts have noted that it is unclear whether relief under this rule is available to a party that has

---

[4] Beattie, who defendant asserts is the "alter ego" of NCSD, was disqualified by the Court in April 2003 after the Court determined that under New York's Code of Professional Responsibility, Beattie, the Executive Director and alleged sole active officer of NCSD with unique knowledge of its corporate structure and activities, was an "indispensable" witness for plaintiff on the issue of standing to sue herein and that his testimony was likely to be prejudicial to plaintiff.

inexcusably failed to comply with the requirements of Rule 36(a).  *See Sea-Land Serv., Inc. v. Citihope Intern., Inc*., 176 F.R.D. 118, 122 n. 10 (S.D.N.Y. 1997).  This notion is particularly applicable here where plaintiff argues it would be prejudiced by defendant's withdrawal of the  admissions at this late date since it relied upon them in both opposing defendant's motion for summary judgment and moving for summary relief.[5]

Assuming, however, that the rule does apply, defendant's inordinate delay in moving to cure its default in connection with these admissions would require the Court to weigh equally salient principles of equity and procedural conformity.  *See e.g.*, *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Tripodi*, 913 F.Supp. 290, 294 (S.D.N.Y. 1996) (allowing withdrawal of admission because the "presentation of the merits clearly would be served . . . by permitting defendant to dispute a central issue in this case"); *but see O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D.C. Conn. 1985) (granting relief pursuant to Rule 36(b) where  party has, without excusable neglect, failed to comply with Rule 36(a)'s requirement of  response within thirty days, virtually eliminates thirty-day time limit in its entirety).  It is not necessary to engage in the required balancing test, however, since the complaint is subject to dismissal for lack of standing as discussed below.  *See Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist*., --- F.3d ----, 2007 WL 601612, *5 (2d. Cir. Feb. 27, 2007) (citations omitted) (district courts have no authority to settle or give opinions on matters "unnecessary" to decisions).

B.  Standing

---

[5] Contrary to defendant's argument, the fact that plaintiff did not rely on these admissions in moving for previous relief in this case does not diffuse or dilute its claimed predjuice.

1.    Applicable Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion.  *Western World Ins. Co. v. Stack Oil*, 922 F.2d 118, 121 (2d Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to escape summary judgment).  It is with these considerations in mind that the Court addresses defendant's motion for summary judgment.

2.    Evidence of Plaintiff's Standing

The requirement of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]."  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducable constitutional minimum of standing" contains three elements: 1) the plaintiff must have suffered an "injury in fact," that is, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) there must be a causal connection between the injury and the conduct complained of, that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See id*. at 560-61. These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case[.]" *Id.* at 561. The burden of proof is on plaintiff. *Id.*

In the case of a disabled student organization such as plaintiff, "[t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *accord Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). Moreover, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members[,]" provided that it meets the constitutional requirement of a case or controversy, that is, provided that it alleges "that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511.

The complaint sets forth the bases of plaintiff's standing as follows:

> In order to further its objective of enhancing educational opportunities and legal rights of students with disabilities, the

> plaintiff has been devoting resources to conducting voter registration drives among students with disabilities on the college campuses in the state of New York. Had the defendant complied with the NVRA, plaintiff's resources could have been used in ways other than counteracting defendant's failure to properly implement the law. Further, there is a direct conflict between plaintiff's mission to increase the political power of disabled students and defendant's failure to facilitate voter registration.
>
> Members of plaintiff's organization attend campuses in the state-funded university system, are not registered to vote, and were not offered the opportunity to register when they availed themselves of the services of the disabled student services offices.

The Court reviews the record herein in light of the elements which plaintiff must prove to demonstrate standing: 1) injury in fact, that is, an injury to plaintiff as an association or an injury to one or more of its members, *see Warth*, 422 U.S. at 511; 2) a causal connection between the injury and the conduct complained of; and 3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61.

This Court previously addressed the issue of standing in considering the question of whether plaintiff's former counsel, Mr. Beattie, was a likely or necessary witness for plaintiff and thus subject to disqualification. Defendant contends that plaintiff cannot prove that it is a *bona fide* organization rather than merely an alter-ego for Beattie. Short of proof that it is a *bona fide* organization, plaintiff has no basis upon which to claim it sustained injury as an organization. Nor would it be entitled to claim injury as the representative of its members. The evidence on which defendant relies to support its contention that plaintiff cannot prove that it is a *bona fide* organization includes glaring and unexplained discrepancies in key corporate documents, lack of corporate records, pervasive disregard of corporate formalities, and suspect claims concerning plaintiff's corporate organization and membership status.

Indeed, defendant contends that there is little, if any, factual or legal distinction between the Law Offices of Michael Beattie and NCSD. Defendant asserts that NCSD is not a veritable organization, but rather a "sham" corporation Beattie has used to travel from state to state litigating the issue of DSO classification under NRVA since his legal victory in the *NCSD v. Allen* case.

Even assuming that plaintiff is a *bona fide* organization, however, it cannot prove it was injured as a result of any act alleged in the complaint. It is well established that "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993). Rather, to establish organizational injury a plaintiff must show "concrete and demonstrable injury to the organization's activities[.]" *Havens*, 455 U.S. at 379.

In the case at bar, plaintiff's sole theory of organizational injury is that its staff "was forced to devote significant resources to identify and counteract the defendant's [illegal] practices and did so to the detriment of their efforts [to advance other organizational purposes]." *Ragin*, 6 F.3d at 905 (quoting *Havens Realty*, 455 U.S. at 379) (internal quotation marks omitted). Mr. Beattie testified in this case as plaintiff's executive director/corporate counsel and principal witness concerning plaintiff's structure, its staffing and membership, its mission, its means of carrying out that mission, its resources, its usual allocation of resources, and the manner and extent to which those resources were diverted as a result of defendant's conduct. Notably, Mr. Beattie did not know, could not recall or offered conflicting statements

regarding most of these critical facts.[6] Indeed, review of Mr. Beattie's deposition in addition to various affidavits he signed in the course of litigating claims under the NVRA reveals he was not clear on who NCSD's staff was at any given time, let alone what any employee or volunteer was doing.[7] When asked during his deposition to review and explain discrepancies in tax returns he signed on behalf of NCSD, Beattie accused defense counsel of trying to "humiliate [him,] make [him] feel [he] d[id]n't know tax law." Further, Beattie stated that he objected to being asked questions about the tax documents as a "violation of the Americans

---

[6] *See, e.g.,* Deposition of Michael Beattie, attached as Exhibit D-11 to defendant's moving papers, p. 81 (NCSD shares office space with the Law Offices of Michael Beattie), p. 57 (Beattie did not know how he became executive director of NCSD), p. 125 (NCSD "might have" been operated from Beattie's home at one point although Beattie "d[id]n't know"), pp. 29-30 (Beattie did not know who prepared NCSD's articles of incorporation, whether changes were made to them or who would authorize changes), pp. 45-46 (Beattie did not know who NCSD's registered corporate agent was), p. 47 (Beattie did not know what NCSD's bylaws said about board membership or whether bylaws had ever been amended), p. 68 (Beattie did not know the term board members served), p. 70 (did know where resolutions of the board were kept), pp. 130-31 (Although he signed NCSD's tax returns, Beattie did not normally read them or know their contents), pp.165-66 (Beattie did not know how many hours key employees worked for NCSD), pp.23-25 (Beattie did not know how someone became a member of NCSD or how many dues paying members NCSD had), pp. 40-45 (did not know if changes had ever been made to membership definitions or requirements), pp. 26-28 (Beattie did not know when NCSD's alleged annual conference was held, who attended or what is was about), pp. 59-60 (NCSD had no formal budget and no regular source of funding other than attorneys fees generated from litigation), p. 66, 86 (Beattie did not know if NCSD's press release was sent anywhere in New York or if any written materials were ever mailed by NCSD interns to New York), p. 75 (Beattie did know which local and college organizations NCSD worked with in New York to sponsor voter registration drives), p. 94 (Beattie did not know when or where NCSD's alleged video public service announcement concerning voter registration was sent it New York or who decided where it should be sent), p. 97-98 (Beattie did not know what interns at NCSD did to promote voter registration in New York), p. 101-103 (Beattie did not know what happened to phone records or logs which tracked interns efforts to promote voter registration in New York).

[7] *See*, Affidavits signed by Beattie in the U.S. District Courts for Southern Districts of Ohio and Maryland, Exhibits D-30 and D-22 attached to defendant's moving papers.

with Disabilities Act" because he was "legally blind."  Beattie's incongruous testimony is hardly competent proof that NCSD suffered an organizational injury by expending resources based on alleged illegal actions of defendant in New York.  *Compare Ragin*, 6 F.3d at 905 (plaintiff housing organization demonstrated through testimony of its deputy director that investigating and challenging defendant's discriminatory housing practices forced plaintiff to divert resources away from activities such as counseling and referral services); *Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F.Supp.2d 203, 211-12 (E.D.N.Y. 2001) (plaintiff, an enforcement, advocacy and counseling agency, submitted proof from its executive director, based on her personal knowledge and involvement, demonstrating the nature of plaintiff's primary mission and the significant diversion of its resources due to plaintiff's three-year investigation of defendant).

In support of its claim of standing based on injury to NCSD as an organization, plaintiff produced two witnesses for deposition.  Sean Jahanmir testified that he was an intern for NCSD, whom Mr. Beattie allegedly asked to be NCSD's acting director after he had worked for the agency for approximately one month.  *See* Affidavit of Sean Jahanmir and Deposition transcript of Sean Jahanmir, p. 9, attached as Exhibits D- 18 and D-19 to defendant's moving papers.  During his deposition on August 27, 2002, Mr. Jahanmir could not identify any of the college campuses he allegedly called in furtherance of voter registration efforts.  And although Mr. Jahanmir stated that he "called New York" about voter registration issues under NVRA, he could not say which organizations or offices he called.  Curiously, however, in a sworn affidavit which appears to have been both signed and notarized by Mr. Beattie on May 29, 2001, Mr. Jahanmir averred that he had contacted a

number of specific colleges and student organizations in New York which catered to disabled students. And though his affidavit asserts in conclusory fashion that he worked to inform students about the importance of voting and "mailed out over 100 [voter] information packets," at a cost of $1.00 each, Mr. Jahanmir provides no evidence of to whom the packets were allegedly mailed or the date of any mailing. Further, plaintiff provides no documentary support for the claimed hours Mr. Jahanmir worked, the specific matters he worked on or the wages he earned as a paid intern of NCSD.

Donna Gomez, a friend of Beattie's wife, was also identified by plaintiff as a witness with knowledge on the issue of standing. Ms. Gomez was a member of NCSD's board of directors. She attended four board meetings but could not say which month or time of year any of the meetings were held other than one occurred while "it was snowing." During one of the meetings she attended, the attendees reviewed essays of students who had submitted applications for scholarships. Other than these volunteer activities, which comprised approximately 10 hours per year, Ms. Gomez had no other association with NCSD and had no first-hand knowledge of what resources, if any, NCSD had expended in the State of New York. Based on the foregoing, the Court finds plaintiff has simply produced no competent evidence of any of its alleged activities in New York, that it expended resources in New York or that it has suffered a verifiable injury as a result of any alleged action or inaction of defendant.

Insofar as establishing standing based on a ground other than injury to itself as an organization, the record is equally devoid of competent evidence of injury to any individual member of NCSD. Generally, "an organization has standing to bring suit on behalf of its

members if: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 196 (2d Cir. 2000) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (internal quotation marks omitted)).

In the first instance, the Court notes that the record contains scant evidence, if any, demonstrating that NCSD has any *bona fide* members. During the pendency of this litigation, Mr. Beattie claimed that all disabled students who attended state-funded colleges or universities were members of NCSD. However, the articles of incorporation for NCSD produced by Mr. Beattie in response to defendant's discovery demands state that members of the organization were subject to a dues requirement. *See* Exhibit D-24 attached to defendant's moving papers. [8] Notably, yet tax records for the corporation indicate that NCSD has never had any dues paying members. *See* Exhibit D-11 attached to defendant's moving papers. Following his deposition, Beattie produced an "amended" copy of NCSD's articles of incorporation which redefined individual membership as not requiring payment of dues, *see* Exhibit D-23 attached to defendant's moving papers, but this "amended" document was never filed with the State of Virginia where NCSD is incorporated.

As a further matter, neither Danny Persaud or Alexandra Soble, the "member" witnesses produced by plaintiff for deposition, could say when or how they became members

---

[8] When presented with the articles of incorporation which he produced to defense counsel during his deposition, Mr. Beattie stated that the document was a mere "draft copy" of the corporate articles.

of NCSD. In the afore-referenced motion to disqualify Mr. Beattie from representation of plaintiff, the Court previously examined evidence submitted by NCSD in connection with establishing injury to one of its members. Then as now, "the absence of competent evidence of injury to any individual member of the organization is clear from a reading of the affidavits and deposition transcripts of alleged members of plaintiff."[9] Other than these affidavits and

---

[9]

In the April 2003 Memorandum-Decision and Order, the Court noted:

> Danny Persaud, an alleged member of plaintiff, testified at his deposition that he registered to vote at a United States Post Office with no difficulty and that he had made no previous effort to register. Alexandra Soble, also an alleged member of plaintiff, testified at her deposition that her failure to register to vote in November 2000 was partly due to her uncertainty whether she should register in New York (where she attended college) or Washington D.C. (her permanent residence); she is now registered to vote in Washington D.C. Even if the Court were to consider the affidavits of those alleged members whom plaintiff failed to produce for deposition, [FN 4] the record is devoid of relevant competent evidence of injury to an individual member of plaintiff. [FN5]  For example, none of these alleged members' affidavits explains in nonconclusory terms the factors which prevented him or her from registering to vote at any available voter registration site, whether such factors were related to a disability, or how such factors would have been obviated by designating the disabled student services offices in the campuses of state-funded universities as voter registration sites. Such information is essential to a showing that these alleged members were injured by defendant's failure to designate the disabled student services offices as registration sites. It is also essential to a showing that their injuries were related to their disabilities such that the interests which plaintiff seeks to protect in this action are germane to plaintiff's stated mission of "enhanc[ing] educational opportunities and strengthen[ing] the legal rights and remedies of students with disabilities" and "increas[ing] the political power of disabled students[.]" Simply stating that the disabled student services office would be a "convenient" registration site is insufficient. Thus, there is no competent evidence suggesting that the trial testimony of any alleged member of plaintiff would assist plaintiff in establishing standing.
>
>> FN. 4 These alleged members are Thomas Hargrave, Cliff Bisnett, Brian Landry, and Lauren Liona. Beattie's conclusory hearsay statements regarding reasons for plaintiff's failure to produce these affiants for deposition

-16-

deposition transcripts previously considered and rejected by the Court, plaintiff has submitted no additional evidence of alleged harm to any of its members. Thus, the Court concludes that plaintiff has failed to establish an injury in fact necessary to achieve standing. "A hypothetical or abstract dispute does not present a case or controversy: The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." *Port Washington Teachers Ass'n*, 2007 WL 601612, at *5 (quoting *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) (internal quotation marks and balance of citations omitted)).

## III.  CONCLUSION

Having found no material questions of fact on plaintiff's claim of standing, the Court need not address the merits of plaintiff's substantive claim that NVRA requires New York State to designate DSOs as voter registration offices. Based on the foregoing, defendant's motion for summary judgment on the issue of lack of standing is hereby GRANTED; and it is further

ORDERED that plaintiff's complaint is hereby dismissed with prejudice; and it is

---

wholly fail to excuse their absence.

FN. 5  The Court notes also that, in her affidavit, Lauren Liona does not even state that she qualified for services at a disabled student services office on the campus of any state-funded university. Nor does she explain whether and how her alleged difficulties in registering were related to her claimed disabilities. The fact that she was confused about where to register to vote or where to obtain some unspecified type of assistance does not, without more, suggest injury such as would give organizational standing to plaintiff to sue on her behalf.

further

ORDERED that based thereupon the balance of defendant's summary judgment motion is DENIED as moot; and it is further

ORDERED that based upon dismissal of the complaint, defendant's motion to withdraw admissions as well as plaintiff's motion for summary judgment are hereby DENIED as moot.

IT IS SO ORDERED.

Dated: March 27, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge